UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 02-2773(DSD/SRN)

Wildlife Research Center, Inc.,

      Plaintiff,

v.                                      **ORDER OF JUDGMENT**
                                       **AND REMITTITUR**

Robinson Outdoors, Inc.,
f/k/a Robinson Laboratories, Inc.,

      Defendant.

      Clifford S. Anderson, Esq., J.D. Jackson, Esq. and Dorsey & Whitney, 50 Sixth Street South, Suite 1500, Minneapolis, MN 55402, counsel for plaintiff.

      Michael C. Mahoney, Esq., and Mahoney & Emerson, 415 Indian Mound E, Wayzata, MN 55391, counsel for defendant.

      This matter is before the court upon plaintiff's request for judgment in a modified amount of the jury verdict, pre-judgment interest, and permanent injunctive relief. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiff's request in part and denies it in part.

**BACKGROUND**

      Plaintiff Wildlife Research Center, Inc. ("Wildlife"), brought this action against defendant Robinson Outdoors, Inc. ("Robinson"), for false advertising, business defamation and product

disparagement. Wildlife claimed that Robinson made false and misleading statements in advertising its hunting products, which included Carbon Blast, a human scent elimination spray, and Still Steamin' Doe Estrus Urine ("Still Steamin'"), a doe-urine-based attractant. Wildlife claimed that the false advertisements deceived customers and caused damage to Wildlife, who sells similar hunting products.

The matter came on for trial before a jury on August 16, 2005, and was tried through September 12, 2005. On September 13, 2005, the jury finished deliberating and returned the attached Special Verdict, finding that Robinson had violated the Lanham Act, the Minnesota Deceptive Trade Practices Act ("DTPA"), the Minnesota Unlawful Trade Practices Act ("UTPA") and the Minnesota False Statement in Advertising Act ("FSAA"). The jury also found in favor of Wildlife on its common law claims of business defamation and product disparagement. They awarded Wildlife $2,898,438 in actual damages and $1,901,000 in Robinson's profits for the Lanham Act, DTPA and UTPA claims, as well as damages in the amount of $2,898,438 for each of Wildlife's FSAA, defamation and disparagement claims.

**DISCUSSION**

**I.   Monetary Award**

The parties agree that the damages awarded on Wildlife's FSAA, defamation and disparagement claims are duplicative and should not be added to the judgment.[1] Accordingly, Wildlife requests entry of judgment in the full amount of the remaining award of $4,799,438. The requested award consists of (1) damages for each claim in the total amount of $2,898,438 and (2) Robinson's profits attributed to the Lanham Act violation in the amount of $1,901,000.

For violations of the Lanham Act based on false advertising, a plaintiff's recovery may include both actual damages and the defendant's profits.  See 15 U.S.C. § 1117(a).  However, the plaintiff's total recovery is subject to principles of equity. Id. In particular, if the court finds that the recovery amount based on defendant's profits is "inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Id.  The total recovery must constitute compensation, not a penalty. Id.

For Lanham Act violations, the court has broad discretion to award monetary relief "necessary to serve the interests of justice," so long as relief is not awarded as a penalty. Metric &

---

[1] The duplicative result was expected because the court instructed the jury that, in the event they found in favor of plaintiff on more than one claim, they should award damages for each claim without accounting for duplication.  (See Jury Instruction No. 34.)

Multistandard Components Corp. v. Metric's, Inc., 635 F.2d 710, 715 (8th Cir. 1980). To determine whether the interests of justice support an award of defendant's profits, the court may consider evidence of willfulness and bad faith by defendant. See Truck Equip. Serv. Co. v. Fruehauf Corp., 536 F.2d 1210, 1222-23 (8th Cir. 1976) (considerations of willfulness and bad faith justify awarding all of defendant's profits).

Here, the interests of justice support the monetary relief requested by Wildlife, which includes the full amount of Robinson's profits attributable to the Lanham Act violations. As to Robinson's profits, the evidence of willfulness and extensive damage to Wildlife supports an award in the amount of the jury's verdict. During trial, Wildlife made a strong showing of the deliberate falsity of Robinson's advertising. For example, the product testing commissioned by Robinson did not support many of its effectiveness and superiority claims concerning its Carbon Blast product. Nonetheless, Robinson continued to advertise the unsupported claims. Such evidence of intentional misconduct alone justifies an award of profits. See Fruehauf, 536 F.2d at 1222-23. Further, the extent of damage to Wildlife supports the award. Cf. Minn. Pet-Breeders, Inc. v. Schell & Kampeter, Inc., 843 F. Supp. 506, 511, 513 (D. Minn. 1993) (award of profits attributed to trademark infringement based in part on damage sustained by plaintiff). The jury found that Robinson's unlawful conduct caused

Wildlife to suffer $2,898,438 in actual damages. The interests of justice support the award of Robinson's profits to discourage such extensive damage by false advertising. As to actual damages, Wildlife is entitled to recover compensation for its losses.[2] For all of these reasons, the court grants Wildlife's request for monetary relief in the amount of $4,799,438.

Robinson opposes Wildlife's requested award for numerous reasons. First, Robinson argues that the award of profits duplicates the damages award and therefore constitutes a penalty. It is true that Wildlife is not entitled to recover Robinson's profits to the extent that they duplicate Wildlife's actual damages. See EFCO Corp. v. Symons Corp., 219 F.3d 734, 742 (8th Cir. 2000). However, the court specifically instructed the jury to award only those profits of Robinson that were attributable to the false advertising and not already taken into account or included in Wildlife's actual damages. (Jury Instruction Nos. 24 & 28.) The court presumes that jurors follow the instructions given to them. See Francis v. Franklin, 471 U.S. 307, 326 n. 9 (1985); United States v. Paul, 217 F.3d 989, 999 (8th Cir. 2000). Therefore, Robinson's argument must fail.

---

[2] Robinson repeats its earlier argument, raised in a pre-trial motion to exclude, that Wildlife's expert testimony cannot support the jury's verdict as to actual damages. The court declines to address Robinson's argument at this time because it is more appropriately addressed in a Rule 59 motion.

Second, Robinson contends that Wildlife cannot recover Robinson's profits because there has been no finding that Robinson willfully violated the Lanham Act.  Robinson argues that Eighth Circuit caselaw requires such a finding.  (See Def.'s Mem. Opp'n Final J. at 9-10.)  However, the cases cited by Robinson predate the 1999 amendment to section 1117(a) of the Lanham Act.[3]  Before 1999, section 1117(a) allowed recovery for, among other things, "a violation under section 1125(a) of this title."  15 U.S.C. § 1117(a) (1994).  Section 1125(a) addresses false or misleading advertising.  See 15 U.S.C. § 1125(a).  Congress amended the language of section 1117(a) in 1999 to allow recovery for "a violation under section [1125(a)] of this title, *or a willful violation* under section [1125(c)]."[4]  Trademark Amendments Act of 1999, Pub. L. No. 106-43, § 3(b), 113 Stat. 218, 219 (Aug. 5, 1999) (emphasis added).

Although the Eighth Circuit has not yet addressed the effect of this amendment, other circuit courts have held that it removes any willfulness requirement for claims based on false or misleading

---

[3] For example, Robinson cites Porous Media Corp. v. Pall Corp., 110 F.3d 1329 (8th Cir. 1997), Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242 (8th Cir. 1994), and Truck Equipment Service Co. v. Fruehauf Corp., 536 F.2d 1210 (8th Cir. 1976).

[4] Congress amended this language again in 1999 and 2002.  The present version allows recovery for "a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c)."  15 U.S.C. § 1117(a).

6

advertising.  See Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 174 (3d Cir. 2005); Quick Techs., Inc. v. Sage Group PLC, 313 F.3d 338, 348-49 (5th Cir. 2002).  The court agrees.  The amendment explicitly requires willfulness for recovery under section 1125(c), which addresses dilution of famous marks.  By contrast, recovery for false advertising claims does not refer to willfulness.  See 15 U.S.C. § 1117(a).  To hold that willfulness is nonetheless required for false advertising claims would contradict the plain language of section 1117(a).  Therefore, Robinson's argument as to willfulness must fail.

Third, Robinson argues that equitable considerations weigh against the award of its profits.  Robinson cites the numerous equitable factors set forth by the Third Circuit Court of Appeals in Banjo Buddies.  See 399 F.3d at 175 (relevant factors include defendant's intent to deceive, whether sales were diverted, adequacy of other remedies, any unreasonable delay by plaintiff, and public interest).  The Eighth Circuit has not required such an expansive discussion of factors.  Rather, a district court may award monetary relief "necessary to serve the interests of justice."  Metric, 635 F.2d at 715.  Therefore, defendant's argument does not change the court's analysis.

Even if the court considers the evidence in light of the Banjo Buddies factors, however, an award of Robinson's profits remains in the interests of justice.  First, the evidence suggests Robinson

had the intent to confuse or deceive consumers, as discussed above. Second, the jury verdict demonstrates that Robinson diverted sales from Wildlife. The third factor - adequacy of other remedies - may be in Wildlife's favor. The jury awarded Wildlife actual damages, which included loss of profits. However, the case was complex and involved multiple products as well as numerous false advertising claims spanning a period of years. In addition, Robinson did not produce until mid-trial material evidence that was favorable to Wildlife. These circumstances might have hampered Wildlife's ability to try its claims, which could raise doubts as to the adequacy of the damages award. Fourth, Robinson has not shown that any delay by Wildlife in asserting its rights was unreasonable or prejudiced Robinson in any way. Finally, the public interest favors discouraging false advertising. Based on all of the above, the court finds that a consideration of the Banjo Buddies factors also favors an award of Robinson's profits.

**II. Prejudgment Interest**

Wildlife requests prejudgment interest on the full monetary award. "A district court has discretion to deny prejudgment interest in Lanham Act cases." EFCO, 219 F.3d at 743. Because one purpose of prejudgment interest is to promote settlement, concepts of equity and fairness counsel against imposing interest if the damage amount is nearly impossible to determine before trial. Id. at 743. The other purpose of prejudgment interest is to compensate

8

the prevailing party for the true costs of damages incurred. Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir. 1986).

Here, neither purpose of prejudgment interest under federal law is met. As noted earlier, this case involved numerous claims of false or misleading statements relating to multiple products over a period of years. The issue of liability was highly contested on every ground. For these reasons, damages to Wildlife were nearly impossible to ascertain before trial. Moreover, the total monetary award fully compensates Wildlife. It is recovering not only actual damages related to the false advertisements, but also defendant's profits in the amount of $1,901,000. Robinson correctly notes that Wildlife's damages also include projected profits based upon annually projected growth, which serves to compensate Wildlife for the true costs of damages incurred. The court finds that all of the above circumstances are exceptional and weigh against prejudgment interest pursuant to federal law.

However, Wildlife is entitled to prejudgment interest pursuant to Minnesota statute section 549.09.[5] In relevant part, it provides that:

---

[5] Wildlife noted the availability of prejudgment interest under Minnesota law and therefore did not waive its right to interest. Cf. Lucas v. Am. Family Mut. Ins. Co., 403 N.W.2d 646, 646 & n. 1 (Minn. 1987) (implying that merely reserving right to interest does not constitute waiver).

9

> [e]xcept as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest on pecuniary damages shall be computed as provided in clause (c) from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first, except as provided herein.

Minn. Stat. § 549.09, subd. 1(b). Clause (c) provides that "[t]he interest shall be computed as simple interest per annum. The rate of interest shall be based on the secondary market yield of one year United States treasury bills, calculated on a bank discount basis as [administratively calculated]." Minn. Stat. § 549.09, subd. 1(c).

The court must therefore assign values to the appropriate variables. This action commenced with the filing of the complaint on August 5, 2002. Therefore, the relevant period for prejudgment interest is from that date until today, October 25, 2005. Based on information from the Minnesota state court administrator, the relevant rates for each of the applicable years are as follows:

| Year | Rate |
|---|---|
| 2002 | 2% |
| 2003 | 4% |
| 2004 | 4% |
| 2005 | 4% |

The jury award for damages on Wildlife's state law claims was $2,898,438. The court therefore calculates prejudgment interest as follows:

```
Total damages award = $ 2,898,438
    2002 (148 days of a 360-day year)  =   $  23,831.60
    2003                                =   $ 115,937.52
    2004                                =   $ 115,937.52
    2005 (298 days of a 360-day year)  =   $  95,970.50
```
Total pre-judgment interest:        =   $ 351,677.14

**III. Injunctive Relief**

Wildlife requests that the court grant injunctive relief by ordering Robinson to (1) cease publishing false or misleading advertisements, (2) deliver offending advertisements to Wildlife for destruction and (3) publish a corrective advertisement. Injunctive relief is available under the Lanham Act and Minnesota law.  See Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980) (injunction allowed under Lanham Act); Minn. Stat. § 325D.45, subd. 1 (injunctive relief available under DTPA); Minn. Stat. § 325D.15 (injunctive relief available under UTPA).  An injunction must describe in sufficient detail the act or acts to be restrained.  Fed. R. Civ. P. 65(d).

Robinson represents that it has ceased to publish many of the false and misleading statements at issue in this case.  However, it continues to claim that its Still Steamin' Doe Estrus Urine product is "immediately wax sealed," contains "100% Pure Estrus Urine" and is collected "From One Single Doe."  (Edberg Aff. ¶¶ 5, 8.)  These statements were at issue in this case.  Because the jury found

11

Robinson in violation of the law, it must be enjoined from continuing to publish these statements.[6]  Therefore, Wildlife's request for an order to cease publication of false and misleading statements is granted.  However, as to Wildlife's request for delivery and destruction of offending advertisements, the court finds that such a remedy is unnecessary and unwarranted because Wildlife's rights are adequately protected by enjoining publication.

Injunctive relief in the form of a corrective advertisement is often granted in cases involving public health or welfare.  See, e.g., Energy Four, Inc. v. Dornier Med. Sys., Inc., 765 F. Supp. 724, 735 (N.D. Ga. 1991) (corrective notice is justified due to parties' intense and direct competition, public health concerns and conclusion that both parties are entitled to injunction); Upjohn Co. v. Riahom Corp., 641 F. Supp. 1209, 1226-27 (D. Del. 1986) (noting possible danger to public and requiring affirmative disclaimers on product packaging and literature).  Here, the corrective advertisement requested by Wildlife does not indicate any purpose related to public health or welfare.  Moreover,

---

[6] Robinson argues that the evidence provided at trial does not support all of Wildlife's claims.  It is true that the jury did not specifically find that each and every statement at issue was false or misleading. However, based upon the substantial award and the evidence offered to support a verdict in favor of Wildlife on all claims, the court understands the jury's verdict to find all published statements at issue to be unlawful.  Furthermore, Robinson has failed to point to any particular testimony or evidence produced at trial to support its argument.

Wildlife has failed to request specific corrective advertising. See Rhone-Poulenc Rorer Pharms., Inc. v. Marion Merrell Dow, Inc., 93 F.3d 511, 517 (8th Cir. 1996) (vacating portion of injunction that required broad corrective advertising disclosures). For example, Wildlife's proposed advertisement broadly states that Robinson published false statements "regarding the manner and means of doe estrus urine collection." For all of the above reasons, Wildlife's proposed corrective advertisement is both unwarranted and impermissibly broad. The court denies Wildlife's request for corrective advertising.

## CONCLUSION

Accordingly, based upon the jury's verdict, and for the reasons stated, **IT IS HEREBY ORDERED** that:

1.   The jury's award of $13,494,752 is remitted.

2.   Judgment be entered in favor of plaintiff and against defendant in the amount of $4,799,438 plus pre-judgment interest in the amount of $ 351,677.14 plus post-judgment interest pursuant to 28 U.S.C. § 1961 and with costs in accordance with Federal Rule of Civil Procedure 54(d)(1).

3.   Defendant, or anyone that advertises on its behalf at defendant's direction and within defendant's control, shall not publish any Carbon Blast or Still Steamin' Doe Estrus Urine ("Still Steamin'") advertising, including, but not limited to, print,

television, radio, internet, product packaging, catalogs, point-of-sale, trade show-related advertisements, or web pages that contain the following prohibited language:

a. Relating to Carbon Blast: Any statement or claim that Carbon Blast is at least 15 times (or any other unsupported number) more effective than other scent elimination products, contains "Activated Carbon Fibers" or is "proven" more effective.

b. Relating to Still Steamin': Any statement or claim that Still Steamin' is "100% doe estrus urine," "collected from a single doe/animal," "collected at the peak of estrus," "collected daily," or "immediately bottled and wax-sealed for shipment."

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 25, 2005

s/David S. Doty
David S. Doty, Judge
United States District Court

14